# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

ROBERT L. HENDERSON,

                    Plaintiff,

-vs-                                            Case No.  8:04-cv-2382-T-24TGW

HOME DEPOT U.S.A., INC.,

                    Defendant.

_____/

# O R D E R

This cause comes before the Court for consideration of Defendant's Motion for Summary Judgment (Doc. No. 15).  Plaintiff filed a Memorandum in Opposition thereto (Doc. No. 44).

Plaintiff filed a four-count Complaint alleging age discrimination and retaliation in violation of the Age Discrimination in Employment Act and the Florida Civil Rights Act.  Plaintiff asserts age discrimination in his denial of two positions at Home Depot's Customer Contact Center ("CCC").  He also asserts disparate treatment based on age by the manager of the store in which he worked.  His retaliation claims relate to his treatment in the store for two days after he returned from a leave of almost 90 days, upon which he bases a constructive discharge claim, and also as to the handling of his vacation pay after he resigned.

## I.  BACKGROUND

### A.  Store Level

Defendant hired Plaintiff (date of birth: 11/21/51) as a Store Human Resource Manager ("SHRM") on January 14, 2002 and assigned him to Store # 6305.  As an SHRM, Plaintiff reported both to the Divisional Human Resources Manager, Annette Blackerby, and the Store Manager, first

Randy Waller and then, beginning in June 2003, Sherry Speer.  While the Store Manager was the ultimate authority within the store, Blackerby evaluated Plaintiff's performance.

On April 11, 2003, Plaintiff received a performance evaluation ranking him as an "Achiever" in his overall performance, "Effective" in his leadership abilities and "Promotable" in his potential abilities.  Waller, however, first complained to Blackerby about Plaintiff's performance in April 2003 and provided her with a handwritten note to document his complaints.  Waller also provided Blackerby with documentation of his investigation into Plaintiff's improper use of merit badges. Waller's other concerns related to his belief that Plaintiff was discussing confidential matters that came up in the store management staff meetings with hourly associates and Plaintiff's failure to work his schedule.  Waller said Plaintiff ignored the schedule he himself submitted and often was not in the store when he was expected to be there.  District Manager Don Jones and Blackerby met with Plaintiff on May 1, 2003 to discuss the concerns Waller had raised.  Blackerby decided not to issue written discipline to Plaintiff, but she documented the discussion as a coaching session.

Christopher Cook replaced Don Jones as District Manager over Plaintiff's store in May 2003. In June 2003, Cook selected Speer to be Store Manager of Plaintiff's store.  Speer reported directly to Cook.  Neither Cook nor Blackerby ever told Speer that they had any problems with Plaintiff's performance.  Cook later added a graduate of Home Depot's Store Leadership Program, Nadia King, to Store No. 6305's management team, hoping that Speer and King would lift the store from recent turmoil.

Plaintiff complained to Blackerby that Speer was not allowing him to do initial interviews or be part of the interview process as he had been when Waller was Store Manager.  Plaintiff also complained to Blackerby that Speer was not allowing him access to the corporate credit card.

Defendant's policy was that the corporate card was to be kept in the vault when it was not in use. Despite that policy, Speer kept the card on her person, and Plaintiff did not have access to it without asking Speer for access.

Cook and Blackerby gave Plaintiff a final counseling in July 2003 for entering reviews in the  Associate Information Managment System ("AIMS") before they were delivered to the associates.  All SHRMs are held accountable for performing acceptably on a series of metrics, one of which measures the timeliness with which reviews are given, as entered into AIMS.  Blackerby believed the early entry of reviews raised a serious question as to Plaintiff's integrity, as it amounted to falsification of company records to affect his performance metrics.  Plaintiff admits that he entered the reviews before they were issued to the associates.

In September 2003, Speer complained to Blackerby about Plaintiff's performance.  Speer complained that Plaintiff was not working his schedule, generally did not have a good relationship with store management and was not effective in leading the store's human resources functions. Blackerby and Speer had a counseling session with Plaintiff.  During that meeting, Blackerby, Speer and Plaintiff developed a game plan for Plaintiff to improve his performance and  agreed that they would revisit Plaintiff's performance in 90 days.

On December 6, 2003, Karla Chancey, Field Trainer, was working on some routine audits in Defendant's Training Tracking system when she noticed a number of people who had been credited for a class that she knew they had not attended.  The class was a December 6, 2003, Cashier College Trainer Certification.  The entries caught Chancey's eye for a number of reasons, including the fact that she regularly taught the course yet was listed as having attended it for credit.  Chancey immediately reported the discrepancy to her supervisor.

Thereafter, the discrepancy was reported to Blackerby, who investigated Chancey's discovery by running some queries in AIMS on December 22 and 23, 2003. Approximately 75 associates out of approximately 250 in the whole store had been given credit in AIMS for completing a 40-hour course on December 6, 2003. One report that Blackerby generated included the user id of the person who had entered each training record, showing that Plaintiff, "RLH066," had made all the entries. More than 35 of those who got credit were associates in Department 90 - the cashiers. If that many cashiers had taken a 40-hour course at the same time, there is no way Store No. 6305 could have kept its usual operating hours.

In addition, one of the metrics for which Plaintiff was held accountable was the Learning Index. Every associate has a curriculum designed to help the associate achieve career goals with Home Depot. The SHRM's role includes making sure ASMs and department supervisors build sufficient time into associates' work schedules to permit them to work on the curriculum. The Learning Index measures the degree to which associates have completed the expected curriculum for the measuring period. A satisfactory Learning Index for a SHRM is 85%. The Cashier College course in question gave Plaintiff a Learning Index of 245% for December as of the 23rd of the month, the date Blackerby generated the report. However, even with the 245% result for December, his Learning Index for all of 2003 was only 72%, short of Plaintiff's goal. Blackerby concluded that Plaintiff had a motive to falsify the training records to boost his Learning Index metric.

Blackerby informed Cook about the discrepancy. Cook wanted to fire Plaintiff immediately because of the prior issues, including the final warning from July 2003. However, Blackerby told Cook, "we're not at that point yet." Blackerby Dec. ¶ 22. Blackerby wanted first to question Plaintiff about the training records issue. Therefore, Blackerby scheduled a meeting with Cook and

Plaintiff for the afternoon of January 2, 2004.  Just prior to the meeting, Blackerby received a report from Speer and King stating that Plaintiff had failed to follow through on most of the game plan they had given him in September 2003.  They told Blackerby that Plaintiff was still ignoring his scheduled work hours and his responsibilities in driving the store's human resources functions and that he lacked credibility with store management.  Blackerby decided if Plaintiff were not fired over the training records, he at minimum would be placed on a 90-day improve-or-remove Performance Improvement Plan.

When Plaintiff arrived at work on January 2, 2004, ASM Nelson Torres told Plaintiff that Cook had called the store and asked that Plaintiff come to the District Office for a meeting. As Plaintiff went to his office, someone else told him that Blackerby had called about the meeting. When Plaintiff got this second message, he turned around, left and did not attend the meeting. Plaintiff expected something adverse to happen at the meeting.

Instead of going to the meeting with Cook and Blackerby, Plaintiff went to his doctor, Dr. Robinson, and obtained a note keeping him out of work from January 2 through January 9, 2004, which he faxed to Blackerby.  On January 9, Plaintiff faxed a second note to Blackerby, excusing him from work from January 2 through January 17.  On the fax cover sheet, Plaintiff wrote, "DR continued my out-of-work status pending new tests and current medication.  Spot on lung is a major concern."

Plaintiff provided a third note excusing him from work through February 12, 2004, and at the same time requested Family and Medical Leave Act paperwork.  Dr. Robinson's medical certification was faxed to Blackerby a couple of days later.  Dr. Robinson reported that Plaintiff's

medical condition keeping him out of work was "depression, anxiety, insomnia." Plaintiff's leave was approved by Blackerby.

On January 22, 2004, Plaintiff filed a Charge of Discrimination with the EEOC alleging that Speer and Blackerby had discriminated against him based on his age. Blackerby received a copy of the charge in January 2004. Blackerby expressed frustration to Cook about Plaintiff's EEOC charge. Cook was also frustrated about the charge. Blackerby noted that the charge alleged that Speer had called Plaintiff "old man" and made other negative remarks about Plaintiff's age.

While Plaintiff was out on leave, Blackerby conducted additional investigation of the training records and concluded that Plaintiff should be fired for falsifying the training records when he returned from leave. She prepared a termination notice for Plaintiff reflecting his termination for failure to act with integrity and honesty and violation of company policy. Blackerby, with Cook's approval, planned to tell Plaintiff he was fired on the day he returned from his leave.

On the day that Plaintiff returned to work, Speer and King worked on the computer in Plaintiff's office, which did not allow him access or time to spend in his office. The associates in the store got Plaintiff a cake and a card, but Plaintiff contends that Speer, King and the other managers intentionally boycotted the gathering.

Before Blackerby presented Plaintiff with the termination notice, he sent her an e-mail at 11:04 a.m. on March 24, 2004, stating that when he returned from leave on March 22, 2004, Speer and King treated him in a retaliatory manner, the retaliation had occurred since he filed an EEOC charge, and as a result he had no choice but to resign.

Just before Plaintiff returned to work, Plaintiff requested Blackerby to provide him with 80 hours of vacation pay to which he was entitled. Specifically on March 20, 2003, two days before

his return, Plaintiff requested the pay in an e-mail to Blackerby's assistance, Nina Stroade.  Plaintiff

repeated his request on March 22, 2003 in an e-mail to Blackerby, the same day he returned to work.

On the morning of March 23, 2004, Plaintiff sent another e-mail to Blackerby asking about his

vacation pay and stating he had not heard from her.  Blackerby responded by informing Plaintiff that

he could expect to get the vacation pay by that Thursday.  This was a routine request, and Blackerby

prepared the on-line form to instruct the Payroll Department to issue Plaintiff a check.

Through a series of administrative errors, complicated by the fact that Plaintiff resigned and

became a former associate while his vacation pay request was pending, the check was sent first to

the store where he no longer worked, then to an address where he no longer lived, and finally to a

street address one digit off from his current address.  Defendant provided Plaintiff with all of the pay

to which he was entitled approximately 30 days after his initial request.

Only after receipt of the vacation pay check did Plaintiff claim entitlement to two more days'

salary, and he got the check for that about two weeks later (and after one misdelivery).  Stroade had

learned by May 5, 2004, the day she was working to get the misdelivered check for two days' salary

reissued and after her efforts with respect to the original check that Plaintiff's second EEOC charge

alleged retaliation in Home Depot's failure to pay his vacation pay.  Stroade noted on a fax cover

sheet to Payroll that Plaintiff "has an EEOC charge with retaliation" because she believed it would

help expedite the check.

B.  CCC Positions

In April 2003, Plaintiff applied for the position of Senior Human Resources Manager in

Defendant's Customer Contact Center.   The CCC operates independently from the stores.

Defendant did not hire Plaintiff for the position, but instead hired Rene Frazee (date of birth: 5/5/59). Plaintiff complains that Defendant selected a "younger, less qualified" applicant.  Complaint ¶ 9.

In October 2003, Plaintiff applied for a Human Resources Manager position in Defendant's Call Center.  Plaintiff admits that this move would have been a lateral one.  Rene Frazee oversaw the interview process to fill two HRM vacancies that would report directly to him.  Frazee asked Plaintiff in an interview for the position, "Why would a senior person like you want this job?"  Frazee hired Charlie Hine (date of birth: 4/17/60) and Karen Little (year of birth: 1956).  Blackerby discussed Plaintiff's application for the CCC position with Frazee.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of showing the Court, by reference to materials on file that there are no genuine issues of material fact that should be decided at trial.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Clark v. Coats & Clark, Inc., 929 F.2d 604 (11th Cir. 1991).  When the party moving for the summary judgment does not bear the burden of persuasion on the issue at trial, the moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case.  Celotex, 477 U.S. at 325.  Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim.  Id.  When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and

admissions on file," designate specific facts showing that there is a genuine issue for trial. <u>Id</u>. at 324.

 

      In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor.  <u>Spence v. Zimmerman</u>, 873 F.2d 256 (11th Cir. 1989); <u>Samples on behalf of Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988).  The Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness."  [citation omitted].  The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts.  When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

<u>WSB-TV v. Lee</u>, 842 F.2d 1266, 1270 (11th Cir. 1988).

      Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion.  <u>Augusta Iron & Steel Works v. Employers Insurance of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988).  A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  <u>Id</u>. at 251-52.

III.  DISCUSSION

A.  Age Discrimination[1]

Under the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), method of proving discrimination, the plaintiff has the burden of establishing a prima facie case of discrimination by a preponderance of the evidence.  If such a prima facie case is made, the burden of production, not proof, shifts to the defendant.  The burden of production is to show a legitimate, non-discriminatory reason for its employment decision.  "'It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff . . . .'"  Morgan v. City of Jasper, 959 F.2d 1542, 1548 (11th Cir. 1992)(quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-55 (1981)).  Once the defendant produces such evidence, the plaintiff must demonstrate by a preponderance of the evidence that the proffered evidence is but a pretext to cover up an actual discriminatory motive.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing Anderson v. Liberty Lobby, 477 U.S. 242, 251 (1986)).  A plaintiff must present significantly probative evidence on the issue to avoid summary judgment.  Isenbergh v. Knight-Ridder Newspaper Sales, Inc., 97 F.3d 436, 444 (11th Cir. 1996)(citing Young v. General Foods Corp., 840 F.2d 825, 829 (11th Cir. 1988)), cert. denied, 521 U.S. 1119 (1997).  Conclusory allegations are not sufficient to raise an inference of pretext when extensive evidence of a legitimate, non-discriminatory reason for its action has been given by the defendant.  Id.(citing Young, 840 F.2d at 830).

---

[1]Age discrimination claims brought under the Florida Civil Rights Act are analyzed in the same manner as claims brought under the ADEA.  Zaben v. Air Prods. & Chems., Inc., 129 F.3d 1453, 1455 n.2 (11th Cir. 1997).

1. Disparate Treatment at Store Level

In order to establish a prima facie case of age discrimination, a plaintiff must prove: (1) he was a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) his employer treated him less favorably than similar employees outside the protected class." Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999); Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000). Defendant argues that Plaintiff cannot establish that he suffered an adverse employment action, and this Court agrees.

Plaintiff complains about his treatment at Store No. 6305 by his Store Manager and by the District Office. Specifically, he complains that the Store Manager took away some of his hiring responsibilities and restricted his access to the store credit card. In addition, he asserts that Blackerby made up an accusation against Plaintiff regarding falsification of training records.

"An employment action . . . is not adverse merely because the employee dislikes it or disagrees with it." Perryman v.West, 949 F. Supp. 815, 819 (M.D. Ala. 1996). The action must either be an ultimate employment decision, such as discharge, failure to hire or demotion, or else must meet some threshold level of substantiality to give rise to a legally cognizable claim. See Stavropoulos v. Firestone, 361 F.3d 610, 616-17 (11th Cir. 2004)(citing Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1456 (11th Cir. 1998)), cert. denied, 125 S. Ct. 1850 (2005).

The Court finds that the actions alleged by Plaintiff to be adverse are neither an ultimate employment decision nor rise to a threshold level of substantiality to give rise to a claim. Plaintiff's complaint that Speer "essentially excluded him from the hiring process" at Store No. 6305 was an action that carried with it no reduction in salary or benefits or adverse consequences. Complaint ¶ 16. In fact, Speer testified that it was her practice in her previous store to be involved in the

interview process because she wanted to know the associates hired into her store.  Speer Dec. ¶ 5.

Plaintiff admits that he continued to be involved in hiring, identifying the candidates for

interviewing, and coordinating background checks and drug tests.  Plaintiff complained that Speer

did not let him conduct any initial interviews or participate in salary decisions as he did under his

previous store manager.  "Work assignment claims strike at the very heart of an employer's business

judgment and expertise because they challenge an employer's ability to allocate its assets in

response to shifting and competing market priorities."  Davis v. Town of Lake Park, 245 F.3d 1232,

1244 (11th Cir. 2001).  This Court finds that Speer's "exclusion" of Plaintiff from the hiring process

does not constitute an adverse employment action.

Similarly, the fact that Speer took away Plaintiff's access to the corporate credit card did not

constitute an adverse employment action.  In addition, it was not disparate treatment of Plaintiff as

it is undisputed that all of the ASMs and not just Plaintiff had to get approval for their purchases and

obtain physical possession of the corporate credit card from Speer.  "A plaintiff must show [that]

a person [is] similarly situated in all relevant respects in order to make a prima facie case."  LeBlanc

v. TJX Cos., 214 F. Supp. 2d 1319, 1326 (S.D. Fla. 2002).  When an employee has failed to show

the existence of a similarly situated employee and has not presented other evidence of

discrimination, summary judgment for the employer is appropriate.  Id. (citing Holifield v. Reno,

115 F.3d 1555, 1562 (11th Cir. 1997)).

Plaintiff argues that Blackerby made up an accusation that he falsified training records.

Plaintiff, however, presents no evidence that Blackerby made up this accusation.  Instead, Plaintiff's

contention simply amounts to an argument that Blackerby did not adequately investigate who

entered the training records and that someone other than Plaintiff could potentially be responsible

for the inaccurate training records. Plaintiff does not in fact have to have been the person who actually entered the inaccurate training records as long as Defendant reasonably believed that Plaintiff entered the records. Plaintiff has not proffered any evidence that Defendant's belief was unreasonable.

The Eleventh Circuit in <u>Elrod v. Sears, Roebuck & Co.</u>, 939 F.2d 1466 (11th Cir. 1991), addressed a similar issue.

> We must make an important distinction before proceeding any further. Much of [plaintiff's] proof at trial centered around whether [plaintiff] was in fact guilty of the sexual harassment allegations leveled at him by his former co-workers. We can assume for purposes of this opinion that the complaining employees . . . were lying through their teeth. The inquiry of the ADEA is limited to whether [the decision makers] *believed* that [the plaintiff] was guilty of harassment, and if so, whether this belief was the reason behind [plaintiff's] discharge. <u>See</u> <u>Hawkins v. Ceco Corp.</u>, 883 F.2d 977, 980 n.2 (11th Cir. 1989), <u>cert</u>. <u>denied</u>, --- U.S. ---, 110 S. Ct. 2180, 109 L.Ed.2d 508 (1990) (That the employee did not in fact engage in misconduct reported to the employer is irrelevant to the question whether the employer believed the employee had done wrong). Federal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere. Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior.' <u>Mechnig v. Sears, Roebuck & Co.</u>, 864 F.2d 1359, 1365 (7th Cir. 1988)(citations omitted). '[F]or an employer to prevail, the jury need not determine that the employer was correct in its assessment of the employee's performance; it need only determine that the defendant in good faith *believed* plaintiff's performance to be unsatisfactory . . . ." <u>Moore v. Sears, Roebuck & Co.</u>, 683 F.2d 1321, 1323 n.4 (11th Cir. 1982)(emphasis in original). <u>See</u> <u>also</u> <u>Jones</u>, 874 F.2d at 1540; <u>Smith v. Papp Clinic, P.A.</u>, 808 F.2d 1449, 1452-53 (11th Cir. 1987)('[I]f the employer fired an employee because it honestly believed that the employee had violated a company policy, even if it was mistaken in such belief, the discharge is not 'because of race' and the employer has not violated § 1981.').

<u>Elrod</u>, 939 F.2d at 1470.

Finally, Plaintiff claims that Speer and Plaintiff's peer, Operations ASM Ron Burka, referred to him as "the old man" approximately 20 times. These alleged ageist comments are immaterial as

a matter of law because Burka is not a decision-maker in any respect as to Plaintiff, and Speer, while making decisions about the scope of Plaintiff's role in the hiring process, was not a decision-maker as to any adverse employment action.

Accordingly, Plaintiff has failed to establish a prima facie case of age discrimination as to his allegations on the store level.

2.  CCC Positions

Plaintiff also alleges age discrimination in his denial of two positions at Home Depot's CCC. The elements of a prima facie case of age discrimination in the promotion context require the plaintiff to prove that: (1) he is a member of a protected class; (2) he was qualified for and applied for the job; (3) he was rejected; and (4) the promotion was given to a substantially younger individual.  Benson v. Tocco, Inc., 113 F.3d 1203, 1207-08 (11th Cir. 1997).

a)  Senior Human Resources Manager position

Although the Plaintiff can establish a prima facie case as to this position, he cannot rebut Defendant's legitimate, non-discriminatory reason with any evidence of pretext.  Six candidates, including Plaintiff, were interviewed by Mark Alexander, Director of Customer Service Operations at the CCC, Glen Carson, Director of Customer Service Operations in Atlanta, and Harry Geller, Director of Human Resources in Atlanta.  Each candidate participated in an interview process that included: (1) an in-basket exercise; (2) a coaching exercise; and (3) interviews with Alexander, Carson and Geller.  After the full day of interviews and assessments, Alexander, Carson and Geller consulted about their impressions of the candidates.  Using a traffic light, i.e., green, yellow, red, rating system, each of them rated each candidate.  While there was disagreement as to the top, or "green" candidates, Alexander, Carson and Geller all rated Plaintiff "red," the lowest category.  The

field was then narrowed to two candidates, and Frazee was selected after another round of interviews. From Alexander's perspective, Frazee's extensive call center experience was a pivotal reason for his selection. This constitutes a legitimate, non-discriminatory reason for Defendant to hire Frazee over Plaintiff. Plaintiff's personal opinion that Frazee was less qualified without more fails to establish pretext for age discrimination.

b) Human Resources Manager position

Again, although Plaintiff can arguably establish a prima facie case[2] as to this position, he cannot rebut Defendant's legitimate, non-discriminatory reason with any evidence of pretext. From a pool of seven applicants, the candidates were screened down to three finalists: Plaintiff, Charlie Hine and Karen Little. A panel consisting of Frazee, Mike Albrecht, then Senior Manager of At Home Services, and Tracy Daniel, then Manager of Internet Customer Service Center, interviewed the candidates, and all were asked the same interview questions. Plaintiff was the lowest scoring of the three candidates, and the interview panelists unanimously concluded that Plaintiff was someone with a top-down management style who was unlikely to get into the trenches with the CCC associates. Although Plaintiff points to Frazee's question of "Why would a senior person like you want this job?" as evidence of pretext, an isolated, ambiguous comment, when weighted against

---

[2]The Court notes that "[n]on-selection for a position of employment is not always an adverse employment action. In cases where the sought position is a lateral transfer, without additional material benefits or prestige, it would be improper to conclude that a denial of such a transfer would be a materially adverse action." Mitchell v. Vanderbilt Univ., 389 F.3d 177, 183 (6th Cir. 2004). Plaintiff argues in his memorandum that "[t]he Call Center position would have been a much more desirable position for Plaintiff because it would have enabled him to get out from under Speer's authority and escape her ageist comments and other discriminatory actions." Plaintiff's Memorandum in Opposition, Doc. No. 44 at p. 4. Plaintiff, however, admits in his deposition that the move from SHRM to CCC HRM would have been a lateral one. Plaintiff's Dep. at 98-99, 224, 229, 245.

other evidence, does not raise an issue of discriminatory intent. <u>Leatzow v. A.M. Castle & Co.</u>, No. 99-14218-CIV, 2001 WL 1825851, at *4 (S.D. Fla. Nov. 14, 2001); <u>see also</u> <u>Barnes v. Southwest Forest Indus., Inc.</u>, 814 F.2d 607, 610-11 (11th Cir. 1987). Plaintiff's other suggestions of pretext are completely without merit and, therefore, will not be discussed.

The Court notes as to both of these positions that an employer may choose not to promote an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason. <u>See</u> <u>Nix v. WLCY/Rahall Communications</u>, 738 F.2d 1181, 1187 (11th Cir. 1984). Plaintiff has failed to proffer any evidence that Defendant used a discriminatory reason for not hiring Plaintiff for one of these positions.

Accordingly, summary judgment must be granted in favor of the Defendant on Plaintiff's age discrimination claims.

<u>B.  Retaliation</u>

In order to establish a prima facie case of retaliation, a plaintiff must show that: (1) he was engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal link between his protected activity and the adverse employment action. <u>See</u> <u>Weeks v. Harden Mfg. Corp.</u>, 291 F.3d 1307, 1311 (11th Cir. 2002).

1. Internal Complaint to Blackerby About Speer's "Old Man" Comments

Although Plaintiff attempts to argue that he complained to Blackerby about Speer's "old man" comments, Plaintiff, in fact, admits that he made no internal complaints of age discrimination prior to filing the charge. While Plaintiff claims that he complained to Blackerby about trivial matters that he personally attributed to age discrimination, e.g., changing the hiring process, he admits that he never voiced his belief that age animus was motivating Speer's conduct or reported

Speer's alleged ageist comments prior to filing his charge.  Plaintiff's Dep. at 163:1-5; 179:13-15, 181:1-9.  In order to constitute protected activity, a Plaintiff must at the very least, communicate her belief that illegal discrimination is occurring to the employer.  Webb v. R&B Holding Co., 992 F. Supp. 1382, 1389 (S.D. Fla. 1998)("It is not enough for the employee merely to complain about a certain policy or certain behavior . . . and rely on the employer to infer that discrimination has occurred."); Gleason v. Mesirow Fin., Inc., 118 F.3d 1134 (7th Cir. 1997)(granting summary judgment and finding that general complaints absent specific allegations of sexual harassment do not constitute protected activity); Barber v. CSX Distrib. Servs., 68 F.3d 694, 701-02 (3d Cir. 1995)(letter to HR complaining about unfair treatment but not specifically complaining about age discrimination is not protected activity); Conrad v. Board of Johnson County Comm'rs, 237 F. Supp. 2d 1204, 1243-44 (D. Kan. 2002)(granting summary judgment and finding that where employee complained regarding employer's accusations of erratic behavior and fitness for duty evaluation but never complained of ADA violation or disability discrimination, she did not engage in protected opposition and cannot have held a reasonable belief that her complaints were protected by the ADA).

Plaintiff alleges "I'm sure I told [Blackerby] about ['the old man comments'], not saying, 'They called me old man,' but 'The way I'm treated in the store is not right, and I feel like that I'm discriminated against, and I'm not treated fairly in that store." Plaintiff's Dep. at 181:5-9. Plaintiff never used the term "age discrimination." Pursuant to the controlling case law discussed above, this is insufficient to constitute protected activity.

Even if this Court were to find that Plaintiff complained to Blackerby about Speer's "old man" comments and this constituted protected activity, Plaintiff still fails to establish a prima facie

case as to this protected activity because he did not experience an adverse employment action, and he fails to establish a causal link between the protected activity and the adverse employment action.

a) Store Level Treatment as Adverse Employment Action

Plaintiff complains that Speer did not give him a Palm Pilot for Christmas 2003 as she did for other Assistant Managers, that none of the managers attended his welcome back party, and he could not use his office for two days when he returned to work from his leave of absence.  These do not, even considered collectively, constitute an adverse employment action.  See Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453 (11th Cir. 1998).  Even if the Court could find an adverse employment action occurred, Plaintiff does not allege when he made the internal complaint to Blackerby and does not allege that Speer knew that he complained to Blackerby about her "old man" comments.  Accordingly, the Court would be unable to find a causal link between the internal complaint and the alleged adverse employment actions by Speer.

b) Constructive Discharge as Adverse Employment Action

Plaintiff also contends that he was constructively discharged and this satisfies the adverse employment requirement.  To make a claim of constructive discharge, an employee must show that working conditions were so difficult or unpleasant as to compel a reasonable person to resign.  Hill v. Winn-Dixie Stores, Inc., 934 F.2d 1518, 1527 (11th Cir. 1991) (requiring "a high degree of deterioration in an employee's working conditions, approaching the level of 'intolerable' "); see also Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1231 (11th Cir. 2001).  Under a constructive discharge claim as defined by the case law, Plaintiff has failed to demonstrate that his working conditions had deteriorated to a point of being intolerable as to compel a reasonable person to resign.  See, e.g., Garner v. Wal-Mart Stores, Inc., 807 F.2d 1536, 1539 (11th Cir. 1987)(employee has

obligation to be reasonable, and resignation after one-day's disappointment in temporary demotion is inherently unreasonable); <u>Alicea Rosado v. Garcia Santiago</u>, 562 F.2d 114, 119-20 (1st Cir. 1977)(demotion with transfer, along with loss of prestige and blow to pride, is not sufficient to support claim for constructive discharge, absent a more drastic reduction in quality of working conditions); <u>Junior v. Texaco, Inc.</u>, 688 F.2d 377, 380 (5th Cir. 1982)(negative evaluation of employee's performance, where no one suggested the employee would be fired, the employer expressed a willingness to re-examine the issue in three months, and the employee admitted that he otherwise enjoyed working for the employer, is insufficient to effect constructive discharge); <u>Miller v. Illinois</u>, 681 F. Supp. 538, 544 (N.D. Ill. 1988)(meeting held to inform employee of recommended suspension insufficiently egregious to force employee's resignation).  Accordingly, the Court cannot find that the Plaintiff was constructively discharged.[3]

c) Denial of CCC Positions as Adverse Employment Actions

Finally, Plaintiff suggests that the Court should consider the two positions for which he was rejected as adverse employment actions supporting his claims for retaliation.  The April 2003 job rejection, however, predates Speer becoming store manager at Store No. 6305 in June 2003 and therefore cannot be used as an adverse employment action in retaliation for Plaintiff complaining to Blackerby about Speer.  The October 2003 job rejection is questionable as an adverse

_____

[3]Plaintiff also argues that Blackerby and Cook's *decision* to fire Plaintiff constitutes an adverse employment action even though Plaintiff resigned prior to being terminated and cites to the case of <u>Nance v. Maxwell Federal Credit Union</u>, 186 F.3d 1338, 1341 (11th Cir. 1999).  The <u>Nance</u> case, however, relies on the case of <u>Chardon v. Fernandez</u>, 454 U.S. 6 (1981), and the Court in <u>Chardon</u> "held that the statute of limitations began to run when the defendants made the termination decision and *notified* the plaintiffs of that decision, not when the plaintiffs were actually terminated." <u>Nance</u>, 186 F.3d at 1341 (citing <u>Chardon</u>, 454 U.S. at 8)(emphasis added).  Accordingly, Blackerby and Cook's decision to fire Plaintiff does not constitute an adverse employment action because Plaintiff was not notified of the same.

employment action because it was in fact a lateral transfer as opposed to a promotion as discussed above.  In addition, Plaintiff has failed to establish any causal link between the protected activity and the October job rejection.  Plaintiff does not allege when he made the internal complaint to Blackerby and does not allege that interviewers for the Human Resources Manager position knew that he complained to Blackerby about Speer's "old man" comments.

The Court concludes, therefore, that Plaintiff's alleged complaints to Blackerby about Speer's "old man" comments do not support a prima facie case of retaliation.

2.  January 2004 EEOC Charge

Because Plaintiff cannot establish that his internal complaints to Blackerby about Speer's "old man" comments constitute a protected activity, Plaintiff's only protected activity during his employment with Defendant was the filing of his first EEOC charge in January 2004, while he was out on a leave of absence.

a) Store Level Treatment as Adverse Employment Action

As to this protected activity, Plaintiff argues that the managers skipping his welcome back party and not letting him use his office for two days are the adverse employment actions that he suffered.  For the reasons discussed above, these do not constitute adverse employment actions nor would they support a constructive discharge claim.

b) Delay of Vacation Pay as Adverse Employment Action

Plaintiff also claims retaliation in the delay in the delivery of his vacation pay.  Plaintiff received his first check within 30 days of his initial request and received his second check about two weeks after he requested it.  A delay, however, in providing vacation pay is not an adverse employment action for purposes of a retaliation claim.  Anderson v. Dillon Cos., No. 99-1361, 216

-20-

F.3d 1086 (table), 2000 WL 827646 (10th Cir. June 27, 2000); see also Herron v. DaimlerChrysler Corp., 388 F.3d 293, 301 (7th Cir. 2004)(two-month delay in overtime payment is an inconvenience, but not an adverse employment action); Gupta v. Florida Bd. of Regents, 212 F.3d 571, 588-89 (11th Cir. 2000)(neither mistake in teaching assignment that was promptly corrected nor delay in returning visa application that caused no harm constituted adverse employment action); Schneck v. Saucon Valley School Dist., 340 F. Supp. 2d 558, 579-80 (E.D. Pa. 2004)(delays of 19 days in paying arbitration award, 10 months in updating retirement plan on amount of award, and delay until receipt of final settlement agreement in authorizing agreed-upon sabbatical not adverse actions sufficient to support retaliation claim when school district offered innocent, uncontroverted explanations for delays); Brown v. Sybase, Inc., 287 F. Supp. 2d 1330, 1341-42 (S.D. Fla. 2003)(supervisor's delay in informing salesman that his territory had changed did not constitute adverse employment action); Sharp v. Continental Express Airlines, Inc., No. CIV.A.98-3818, 2000 WL 190244, *7 (E.D. Pa. Feb. 7, 2000)(delay in receiving pay and employment related items not an adverse employment action).  Accordingly, the Court finds that Plaintiff's retaliation claims fail as a matter of law, and Defendant is entitled to summary judgment on these claims.

Accordingly, it is **ORDERED AND ADJUDGED** that:

(1)     Defendant's Motion for Summary Judgment (Doc. No. 15) is **GRANTED**.

(2)     Defendant's Motion to Modify Case Management and Scheduling Order (Doc. No. 37) is **GRANTED**.

(3)     Plaintiff and Defendant's Joint Motion to Continue Pretrial Conference (Doc. No. 80) is **DENIED** as moot.

(4)     The Clerk is directed to enter judgment in favor of the Defendant and close this case.

**DONE AND ORDERED** at Tampa, Florida, this 23rd day of November, 2005.

SUSAN C. BUCKLEW
United States District Judge